Stern, Appellant, *v.* Stern.

Argued March 29, 1954.   Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*John A. Metz, Jr.,* with him *Joseph D. Ripp* and *Metz & Metz,* for appellant.

*Albert D. Brandon,* with him *Joseph G. Robinson, William E. Miller, Jr.,* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, June 4, 1954:

The troubles involved in this lawsuit would probably never have occurred if the defendant, Morris Stern, did not have an overly developed sense of the

dramatic. On April 11, 1953, while his wife was out of the apartment in which they lived, he wrote the following note and left it where her eyes would fall upon it when she returned:

"April 11, 1953

"Dear Helen:

"I've been thinking this over very seriously before I came to a final conclusion. I believe it will be better for both of us if we separated. I just can't get over what has happened to me in past few weeks, so I've decided to leave before something drastically happens to one of us. You have been accusing me for a lot things, but I've always overlooked them. I just can't take it any longer.

"I am leaving everything to you, and you can do anything you wish. I am also leaving you a $3000.00 check. I haven't told a soul about this, so it is up to you to tell them if you care. I don't know how far I am going, but it will be plenty far.

"In closing I want to wish you the best of luck.

"Morris.

"P.S. If you care to leave my personal belonging including the records from the business at my sister Jennie, I would appreciated very much."

Any reasonable person reading this note could only conclude that the writer intended to depart for distant places and never return. In the light of the succeeding circumstances we now know that Morris Stern was only being theatrical when he said: "I don't know how far I am going but it will be plenty far." The evidence reveals that he knew exactly where he was going. He was going to California which, except to a land-travelling turtle, is no longer regarded as "plenty far." Moreover, Stern knew he was going to California only temporarily because he purchased a railroad *round trip* ticket.

He also said in his note: "I am leaving everything to you, and you can do anything you wish." That this statement was but a further extension of histrionic rash is demonstrated by this very litigation in which he now protests because she took him at his word and proceeded to claim what he said he was leaving to her.

On April 15, 1953, after cashing the $3,000 check the defendant left her, Mrs. Helen Stern filed a Bill of Complaint in the Court of Common Pleas of Allegheny County calling for the seizure of the defendant's bank account in the Mellon National Bank and Trust Company, East Pittsburgh, and asking that the Court make such order for maintenance as was fit and proper. This Complaint was filed under the authority of the Act of May 23, 1907, P. L. 227, section 2, as amended (48 P.S. 132) which provides that when a man separates himself from his wife without cause or his whereabouts are unknown, and, "being of sufficient ability, has neglected or refused or shall neglect or refuse to provide suitable maintenance for his said wife, proceedings may be had against any property, real or personal, of said husband, necessary for the suitable maintenance of the said wife. . ."

On April 27, 1953, the Court granted a preliminary injunction against Morris Stern and the Mellon National Bank and Trust Company impounding the defendant's deposits ($25,400) in the bank. Shortly after this, the defendant returned from his threatened self-imposed banishment and filed a petition asking that the Order of Court of April 27, 1953, be vacated, alleging that the facts did not warrant the invoking of the Act of 1907. Mrs. Stern filed an Answer to his Petition and he in turn filed an Answer to the original Bill of Complaint.

On April 18, 1953, Mrs. Stern had filed a similar Bill of Complaint in the courts of Lawrence County,

where the parties had been living at the time of Morris Stern's melodramatic exit from the conjugal domicile. The Lawrence County court also granted the petitioner's request, thus enjoining the Lawrence County bank from permitting the withdrawal of all or any part of the then remaining balance of $4100 on deposit in the husband's account.

On June 22, 1953, after the taking of testimony at a full hearing, the Court of Common Pleas of Allegheny County entered an order dissolving the preliminary injunction for all sums in excess of $5,000 and further ordered that unless Mrs. Stern withdrew the injunction proceedings in Lawrence County, the entire preliminary injunction in Allegheny County would be dissolved, including the amount of $5,000. Mrs. Stern took an appeal from that order and it is one of two appeals now before us.

Upon Mrs. Stern's failure to dissolve the Lawrence County injunction, the court below, in pursuance of what it had said on June 22, 1953, entered an order dissolving the Allegheny County injunction absolutely and Mrs. Stern appealed from that order.

Section 2 of the Act of 1907 under discussion permits seizure of a husband's property only where he has neglected or refused to provide suitable maintenance for his wife *and* he has either separated himself from his wife without reasonable cause *or* his whereabouts are unknown. At the hearing, it became perfectly clear that Morris Stern's final departure was only a sham. Further, that his melodramatic assertion that he had not "told a soul" was the flimsiest pretense. He told several souls about his plans, among them, his attorney. His plans were simple. He was taking a trip to California to see his sister and take a rest, and he wanted a divorce.

Morris Stern's attorney, carrying out his client's instructions, wrote Mrs. Stern advising her that he represented her husband and suggested that she call on him. Mrs. Stern received this letter on April 15, 1951. She never called on the attorney, nor did she contact him in any way.

Blameworthy as the defendant is for the trouble to which he so unnecessarily subjected his wife, his case does not fall within the framework of the factual, legal situation depicted by the Act of 1907. Although Mrs. Stern apparently made some effort to obtain information regarding her husband's whereabouts, having inquired of his uncle and his cousin, she did not call her husband's attorney who, it could be assumed, would be in possession of knowledge as to the defendant's whereabouts since he was currently representing him in a contemplated legal proceeding.

Mrs. Stern cannot avail herself of the provisions of the Act of 1907 for another reason. A sine qua non for invoking the Act of Assembly is that the husband has failed to provide for his wife. Although Morris Stern tormented his wife by wrapping in a cloak of portentous mystery a rather prosaic railroad trip, he did manifest an appreciation of the legal responsibilities devolving upon him to support his wife. He left her $3,000 which would have been more than ample to support her until he returned, less than a month later, from "plenty far."

Although we will affirm the orders of the court below, the costs will be placed on the appellee because this lawsuit would never have occurred if he had candidly informed his wife, as in morals and conscience he was bound to do, that he was taking a trip to California to see his sister and that he was telling many "souls," including her, as to the reason for the trip.

Orders affirmed. Costs on the appellee.

ORDER, PER CURIAM, June 28, 1954:

Petition for reargument denied. Since the only issue presented to us in this appeal was whether or not the injunction was properly dissolved, and since our decision must necessarily be limited thereto, the other issues, as plaintiff's right to support and the amount thereof, still remain before the court below for determination.